# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA ANGLIN, | Case No.: 1:17-cv-00974 - AWI - JLT |
| Plaintiff, | ORDER VACATING THE HEARING DATE OF DECEMBER 1, 2017 |
| v. | |
| ETHELE BARRON, et al., | FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| Defendants. | (Doc. 21) |

Plaintiff Debra Anglin seeks the entry of default judgment against Defendants Ethele Barron, Jim Barron, and EB Preferred, for violations of the Americans with Disabilities Act. In addition, Plaintiff seeks an award of fees and costs related to this action. (Doc. 21)

The Court finds the matter suitable for decision without oral argument. Accordingly, the matter is taken under submission pursuant to Local Rule 230(g) and the hearing date of December 1, 2017 is **VACATED**. For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED** in the modified amount of $7,820.00.

## I.     Procedural History

Plaintiff initiated this action by filing a complaint on July 21, 2017. (Doc. 1) Ethele Barron and EB Preferred were served with the Summons and Complaint on August 9, 2017; and Jim Barron was served on August 16, 2017. (Docs. 7-9) Jose Gonzalez was also named as a defendant in the action, but Plaintiff dismissed her claims against him on October 2, 2017, by filing a Notice of Dismissal

1

pursuant to Rule 41 of the Federal Rules of Civil Procedure. (Doc. 16)

The defendants failed to respond to the Complaint within the time frame required by the Federal Rules of Civil Procedure. Upon the applications of Plaintiff, the Clerk entered default against Ethele Barron, Jim Barron, and EB Preferred. (Docs. 10-13, 18-29) Plaintiff filed the motion for default judgment now pending before the Court on October 31, 2017. (Doc. 21)

## II. Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## III. Factual Allegations[1]

Plaintiff alleges she "suffers from necrotizing fasciitis" and "uses a wheelchair for mobility." (Doc. 1 at 1, ¶ 2) In March 2017, she visited EB Preferred Property Management located at 325 Kern St. in Taft, California. (*Id.* at 2-3, ¶¶ 8, 14) "EB Property Management is a facility open to the public, a place of public accommodation, and a business establishment," and parking spaces are offered "to patrons of the EB Property Management." (*Id.* at 3, ¶ 15) However, Plaintiff found "there were no parking spaces marked and reserved for persons with disabilities during [her] visit." (*Id.*, ¶ 17) She asserts "the defendants once had a parking space marked and reserved for persons with disabilities… [but] the parking space was allowed to fade or get paved over." (*Id.*, ¶ 19)

In addition, Plaintiff asserts a "[p]ath of travel is another one of the facilities, privileges, and advantages offered by Defendants to patrons of the EB Property Management." (Doc. 1 at 3, ¶ 20)

---

[1] The factual assertions of Plaintiff are taken as true because default has been entered against the defendants. *See Pope*, 323 U.S. at 22.

2

However, there was not a handicap-accessible path "into the entry of the EB Property Management." (*Id.* at 3-4, ¶ 21) Rather, the path "required a person to navigate several steps for which there was no ramp." (*Id.* at 4, ¶ 22) Further, "[t]here was a raised threshold at the entrance of the EB Property Management that measured greater than ½ inch." (*Id.*, ¶ 23)

Plaintiff asserts she "personally encountered these barriers," and the "inaccessible conditions denied [her] full and equal access and caused her difficulty and frustration." (Doc. 1 at 4, ¶¶ 27-28) According to Plaintiff, the barriers she encountered "are easily removed without much difficulty or expense," and "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." (*Id.*, ¶ 31) Plaintiff contends she "would like to return and patronize the EB Property Management but will be deterred from visiting until the defendants cure the violations." (*Id.*, ¶ 29)

Based upon these facts, Plaintiff contends that the owners of the business property— Ethele Barron, Jim Barron, and EB Preferred—are liable for violations of the Americans with Disabilities Act of 1990 and California's Unruh Civil Rights Act. (Doc. 1 at 1-2, ¶¶ 2-5, 8-9; *see also* Doc. 1 at 5-8)

## IV. Discussion and Analysis

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant,

a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

      **B.    Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has indicated that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

          1.    The Americans with Disabilities Act

Title III of the ADA prohibits discrimination by public accommodations, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Discrimination under Title III includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C., § 12182(b)(2)(A)(iv). To state a claim for discrimination due to an architectural barrier, a plaintiff must also establish "(1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." *Johnson v. Beahm*, 2011 WL 5508893 *2 (E.D. Cal. Nov. 8, 2011) (quoting *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000)).

              *a.*    *Plaintiff's disability*

The ADA defines disability as "a physical or mental impairment that substantially limits one or

more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities as defined by the ADA include walking and standing. *Id.*, § 12102(2)(A). Here, Plaintiff alleges she "suffers from necrotizing fasciitis" and "uses a wheelchair for mobility." (Doc. 1 at 1, ¶ 2) Given that Plaintiff's physical impairment limits her ability to stand and walk, the Court finds she is disabled within the meaning of the ADA.

### b. *Defendant's ownership of a place of public accommodation*

Plaintiff contends "EB Property Management is a facility open to the public, a place of public accommodation, and a business establishment." (Doc. 1 at 3, ¶ 15) As Plaintiff argues, "service establishment[s] are expressly identified as places of public accommodation and subject to Title III of the ADA." (Doc. 21-1 at 8, citing 42 U.S.C. § 12181(7)(F)) Because the defendants are owners of EB Property Management (Doc. 1 at 1-2, ¶¶ 2-5, 8-9), Plaintiff has established the defendants are owners of a place of public accommodation.

### c. *Denial of access and presence of architectural barriers*

The next two elements of an ADA architectural barriers claim require the Court to evaluate whether architectural barriers worked to discriminate against the plaintiff on account of physical disability. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("an ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they otherwise interfere with his access to the facility").

Plaintiff contends she encountered four barriers that violate the ADA and the Americans with Disabilities Act Accessibility Guidelines (ADAAG) when visiting EB Property Management: (1) lack of accessible parking spaces, (2) lack of an accessible path of travel to the entrance, (3) un-ramped steps, and (4) and a high threshold for the doorway. (Doc. 1 at 6-7, ¶¶37-46) As Plaintiff observes, a business that provides parking spaces must also provide at least one disabled parking space that is van accessible. *See* 28 C.F.R., Part 36, ADAAG, §§ 208.2, 208.2.4 (2010). In addition, paths of travel require "accessible routes" without "stairs, steps, or escalators," and "[i]f an accessible route has changes in level greater than 1/2 in[ch] (13 mm), then a curb ramp, ramp, elevator, or platform lift . . . shall be provided." ADDAG § 4.3.8 (1991); § 303.4 (2010). Finally, a threshold cannot exceed 3/4 of an inch, while the threshold at EB Property Management was 1/2 an inch. ADAAG § 404.2.5 (2010).

5

Thus, Plaintiff has carried her burden to identify architectural barriers in violation of the ADA standards at EB Property Management, which denied her full and equal access to the business.

### d. Removal of the barriers

Finally, a plaintiff must establish that removal of an architectural barrier "is readily achievable" to state a cognizable claim for a violation of the ADA. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); *Johnson*, 2011 WL 5508893 at *2. The term "readily achievable" means it is "easily accomplishable and able to be carried out without much difficulty or expense." *Id.*, § 12181(9). In general, whether removal "is readily achievable" requires the Court to consider:

(A) the nature and cost of the action needed under this Act;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 USCS § 12181(9).

Although Plaintiff does not offer any information regarding these factors, the federal regulations make it clear that the barriers identified by Plaintiff are of the type presumed to be readily removable. Under 28 C.F.R. § 36.304(c), examples of "measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation" include "installing an entrance ramp, widening entrances, and providing accessible parking." Moreover, Plaintiff's allegation that the removal of barriers is readily achievable is sufficient at this juncture. *See Johnson v. Hall*, 2012 WL 1604715 *3 (E.D. Cal. May 7, 2012) (finding the plaintiff's allegation that the barriers were "readily removable" and that he sought "injunctive relief to remove all readily achievable barriers" satisfied his burden); *Johnson v. Beahm*, 2011 WL 5508893, *3 (E.D. Cal. Nov. 8, 2011) (holding the plaintiff's allegation that architectural barriers were readily removable was sufficient because it was accepted as true on default); *see also Sceper v. Trucks Plus*, 2009 WL 3763823 *4 (E.D. Cal. Nov. 3,

2009) (granting default judgment on an ADA claim although the plaintiff did "not specifically allege that removal of barriers was readily achievable," and pled instead that the defendants "were required to remove architectural barriers"). Accordingly, the Court finds removal of the barriers identified by Plaintiff is "readily achievable" within the meaning of the ADA.

      *e.     Conclusion*

Based upon the foregoing, the Court finds that Plaintiff has carried the burden to state a prima facie discrimination claim in violation of Title III of the ADA.

     2.     California's Unruh Civil Rights Act

The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability[ ] [or] medical condition, . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

Significantly, any violation of the ADA also is a violation of California's Unruh Civil Rights Act. Cal. Civ. Code § 51(f); *see also Molski,* 481 F.3d at 731 ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act"). Because Plaintiff alleges a cognizable ADA claim, she has also established the defendants are liable for violating the Unruh Act.

**C.     Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of [a] [d]efendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Thus, the Court must "assess whether the recovery sought is proportional to the harm caused by [a] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2013).

Plaintiff seeks a judgment against the defendants in the amount of $4,000, plus attorney fees. (Doc. 21-1 at 11) This amount represents the statutory minimum under Cal. Civ. Code § 52 for a violation of the Unruh Act. Because the statute contemplates such an award, the amount sought is proportional to the harm caused by the defendants' violations. Therefore, therefore, this factor does not weigh against entry of default judgment.

**D.    Possibility of dispute concerning material facts**

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendants failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

**E.    Whether default was due to excusable neglect**

Generally, the Court will consider whether a defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendants were served with the Summons and Complaint, as well as the motion for default judgment. (*See* Docs. 4, 5, 10) Given these facts, it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in

**F.    Policy disfavoring default judgment**

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendants' failure to appear before the Court makes a decision on the merits impractical.

**G.    Conclusion**

Based upon the foregoing, the Court finds the *Eitel* factors weigh in favor of granting default judgment, and recommends the motion for default judgment be **GRANTED**.

**V.    Relief Requested**

Plaintiff seeks injunctive relief, statutory damages, and attorneys fees for the violations under the ADA and the Unruh Act. (Doc. 21-1 at 10-11; *see also* Doc. 21-2 at 2) Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation. *See Molski*, 481 F.3d at 731.

**A. Statutory Damages**

Plaintiff seeks statutory damages for the defendants' violations of the Unruh Act. (Doc. 21-1 at 11) The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which she was denied equal access. Cal. Civ. Code § 52(a). "Proof of actual damages is not a prerequisite to recovery of statutory minimum damages." *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1170 (S.D. Cal. 2006) (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

To recover statutory damages, a plaintiff must only show that she was "denied full and equal access," not that she was "wholly excluded from enjoying Defendant's services." *Id*. (citing *Hubbard v. Twin Oaks Health and Rehab. Center*, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004). Pursuant to Cal. Civ. Code § 55.56(b), "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion." Cal. Civ. Code § 55.56(b). A plaintiff shows she was deterred from accessing a place of public accommodation where:

> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.
>
> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

Cal. Civ. Code § 55.56(d). Thus, a plaintiff may recover statutory damages even if she does not enter a facility. *Botosan*, 216 F.3d at 835.

Plaintiff asserts that she went to EB Preferred Property Management in March 2017 and personally encountered the barriers identified in her complaint. (Doc. 21-5 at 2, Anglin Decl. ¶ 3) She reports that she found "no parking spaces marked and reserved for persons with disabilities," and there was no ramp for the stairs to the entrance. (*Id.* at 3, ¶¶ 4-5) Plaintiff contends, "Due to the lack of compliant parking spaces and path of travel to the entrance, [she has] been deterred from further attempting to visit the EB Preferred Property Management." (*Id.*, ¶ 7) The Court finds this is sufficient to establish that Plaintiff personally encountered barriers identified in the complaint, and she has been deterred from returning to visit due to these barriers. Accordingly, an award of the requested statutory

minimum under the Unruh Act is appropriate, and the Court recommends Plaintiff's request for an award in the amount of $4,000.00 be **GRANTED**.

### B. Injunctive Relief

The court may grant injunctive relief for violations of the Unruh Act under Civil Code § 52.1(h). To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), a plaintiff must show the defendants have violated the Americans with Disabilities Act Accessibility Guidelines. Where the plaintiff carries this burden, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . . ." *Id.; see also Moeller v. Taco Bell*, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011).

A plaintiff is not required to satisfy other prerequisites generally necessary for injunctive relief since "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller*, 816 F.Supp.2d at 859 (quoting *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at a defendant's establishment violate the ADA and removal of the barriers is readily achievable. *See, e.g., Moreno v. La Curacao*, 463 Fed. App'x. 669, 670 (9th Cir. Dec. 23, 2011); *Johnson*, 2011 WL 2709365 *3; *Sceper*, 2009 WL 3763823 at *4.

As discussed above, Plaintiff has stated a viable Title III discrimination claim. There are several architectural barriers at EB Preferred Property Management that violate the ADAAG, and the removal of the barriers is readily achievable. Injunctive relief compelling Defendants to remove barriers at EB Preferred Property Management to make it readily accessible to individuals with disabilities is therefore appropriate. Therefore, it is recommended that Plaintiff's request for injunctive relief be GRANTED and that Defendants be ordered to remove all architectural barriers identified in Plaintiff's complaint — including providing disabled access to the entrance by installing a ramp, lowering the threshold, and providing accessible disabled parking spaces in accordance with the ADAAG. *See* 42 U.S.C. § 12188(a)(2) (authorizing injunctions under the ADA).

### C. Request for Fees and Costs

Plaintiff also seeks an award of attorney's fees and costs in the amount of $5,220.00 under both

Title III of the ADA and the Unruh Civil Rights Act. (Doc. 21-1 at 11, 13-14) Accordingly, the Court must determine whether the fees and costs sought by Plaintiff are reasonable.

In general, the Court determines a reasonable fee award "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

### 1. Time expended

A fee applicant "bears the burden of … documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Here, Plaintiff's counsel, Russell Handy, reports he "spent a total of 11.2 hours of time" on this action, during which he:

> (1) discussed the case with the client and developed the intake notes; (2) conducted a preliminary site inspection of the real property to comply with my Rule 11 obligations; (3) conducted research of public records to determine the identities of the business owner and owner of the real property; (4) drafted the Complaint; (5) reviewed and executed the Request for Entry of Default; (6) and drafted this application for default judgment and my supporting declaration.

(Doc. 21-4 at 3, Handy Decl. ¶ 5) The Court finds the tasks reported are related to this action, and the time expended on this action was not excessive.

### 2. Hourly rate

Attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate …." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011). Here, Mr. Handy seeks an hourly rate of $425 for his work on this action (Doc. 21-4 at 4), which is not in accord with the

market rate for the Fresno Division.[2]

As the Ninth Circuit observed, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult …." *Camacho*, 523 F.3d at 979 (quoting *Blum*, 465 U.S. at 895 n. 11). A reasonable rate accounts for the lawyer's "experience, skill, and reputation," and the rates awarded in the legal community in which the Court sits. *Id.*; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). In evaluating hourly rates, the Court may consider "[a]ffidavits of the plaintiffs' attorneys and other attorneys regarding fees in the community" and hourly rates paid in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may apply "either current or historically prevailing rates," though "the use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *Schwarz*, 73 F.3d at 908.

Previously, this Court determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014); *see also Miller v. Schmitz*, 2014 WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (awarding $350 per hour for an attorney with 20 years of experience). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for Plaintiff's counsel must be adjusted to calculate the lodestar.

Mr. Handy reports that he has "been in practice for 19 years and [his] practice is dedicated exclusively to disability related issues." (Doc. 21-4 at 3, Handy Decl. ¶ 6) Mr. Handy has "prosecuted over a thousand ADA cases, have prosecuted over 40 ADA trials and … appeared at either state or federal appellate court forums on ADA cases over 30 times." (*Id.* at 4, ¶ 6) Further, Mr. Handy reports

---

[2] The Court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Here, Plaintiff does not argue local counsel was unwilling or unable to prosecute her claims for violations of Title III of the ADA or California's Unruh Act. Therefore, the rates applied must be aligned with this legal community.

he "was awarded the California Magazine's Attorney of the Year (CLAY) award for 2010 for [his] disability work that resulted in a significant ruling for disability litigants under the Unruh Civil Rights Act," and named "one of San Diego's "Top Attorneys 2011." (*Id.*)

In light of both Mr. Hardy's level of experience and reputation, this Court recently determined $300 is an appropriate hourly rate for his work completed in the Eastern District court. *See Johnson v. Patel,* 2017 WL 3953949 at *5 (E.D. Cal. Sept. 8, 2017 (declining to award the requested rate of $425 for Mr. Hardy, and finding "$300.00 was appropriate for plaintiff's counsel, as a partner with significant experience and expertise, in a routine disability access case"); *see also Trujillo v. Singh,* 2017 WL 1831941 at *2-3 (E.D. Cal. May 8, 2017) (awarding the hourly rate of $300 to local counsel with 15 years of experience, finding this amount was appropriate for the Fresno Division for an ADA case). This Court likewise concludes the hourly rate of $300.00 should be awarded.

### 3. Lodestar calculation

With the hourly rate adjustments set forth above, the lodestar for the 11.2 hours that Mr. Hardy expended in this action is $3,360.00. Based upon the prior survey of attorney fees awarded in the Fresno Division and the Court's own knowledge, this fee award is reasonable for the experience, skill, and reputation of Mr. Hardy. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine the reasonableness of a fee request). Accordingly, the Court recommends Plaintiff's request for attorney fees be **GRANTED** in the modified amount of $3,360.00.

### 4. Costs

Both the ADA and Unruh Act authorize the award of costs for an action. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Here, Mr. Hardy reports that he "paid out $460.00 in filing fees and service costs." (Doc. 21-4 at 3, Hardy Decl. ¶ 5) These litigation expenses may be awarded as costs to Plaintiff. *See Alvarado v. Nederend,* 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011) (explaining "filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees" are typically identified as litigation costs); *Moore*, 2017 WL 1079753 at *8 (holding a plaintiff "may recover expenses for postage, courier services, and online research under the ADA"). Accordingly, the Court recommends Plaintiff's request for $460.00 in costs be **GRANTED**.

## VII. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092.

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion for default judgment be **GRANTED**;
2. Plaintiff be **AWARDED** statutory damages in the amount of $**4,000.00**;
3. Plaintiff be **AWARDED** attorney's fees and costs in the amount of $**3,820.00**; and
4. Plaintiff be **GRANTED** an injunction requiring Defendants to provide compliant accessible parking spaces and accessible path of travel to the entrance at the property located at 325 Kern St., Taft, California, in accordance with the Americans with Disabilities Act of 1990 (ADA) and the Americans with Disabilities Act Accessibility Guidelines (ADAAG);

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 27, 2017**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE